# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC., | |
| Plaintiff, | C.A. No. 22-1320-MN |
| v. | **JURY TRIAL DEMANDED** |
| HONEYWELL INTERNATIONAL INC., | |
| Defendant. | |

## <u>OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Matthew B. Goeller (No. 6283)
Megan E. O'Connor (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
matthew.goeller@klgates.com
megan.oconnor@klgates.com

*Of counsel:*
Devon C. Beane
Nathan J. Fuller
Jared R. Lund
K&L GATES LLP
70 W. Madison, Suite 3100
Chicago, IL 60602
Phone: (312) 372-1121
devon.beane@klgates.com
nathan.fuller@klgates.com
jared.lund@klgates.com

*Attorneys for Defendant Honeywell
International Inc.*

Dated: April 4, 2024

# TABLE OF CONTENTS

Page(s)

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.    SUMMARY OF THE ARGUMENT ................................................................................. 1

III.    STATEMENT OF FACTS ................................................................................................ 3

IV.    LEGAL STANDARD ....................................................................................................... 6

    A.    Motion to Dismiss ............................................................................................... 6

    B.    Infringement ........................................................................................................ 6

V.    ARGUMENT .................................................................................................................... 8

    A.    It Is Not Plausible To Infer From The Complaint That Honeywell Had Actual Knowledge Of The Patent-In-Suit ........................................................... 8

        1.    Intermec's Purported Knowledge Of The Patent-In-Suit Cannot Be Imputed To Honeywell ....................................................................... 9

        2.    An Unnamed Honeywell Employee's Involvement With IEEE Fails To Establish Honeywell's Knowledge Of The Patent-In-Suit ...................... 10

    B.    It Is Not Plausible To Infer From The Complaint That Honeywell Had The Necessary Knowledge And Intent To Indirectly And Willfully Infringe ............ 12

    C.    It Is Not Plausible To Infer From The Complaint That Honeywell Was Willfully Blind, It Should Have Known That Its Products Infringed The Patent-In-Suit, Or The Accused Products Have No Substantial Non-Infringing Uses ...................... 14

    D.    It Is Not Plausible To Infer From The Complaint That Honeywell Is Liable For Direct Infringement Of The Method Claims Of The Patent-In-Suit..................... 17

VI.    CONCLUSION ............................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AgroFresh Inc. v. Essentiv LLC*,
    No. 16-662-MN, 2019 WL 350620 (D. Del. Jan. 29, 2019)....................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................6

*Bench Walk Lighting LLC v. LG Innotek Co.*,
    530 F. Supp. 3d 468 (D. Del. 2021)..............................................................................12, 13

*In re Bill of Lading & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)........................................................................................17

*Boston Scientific Corp. v. Nevro Corp.*,
    560 F. Supp. 3d 837 (D. Del. 2021)...................................................................................8

*Deere & Company v. AGCO Corporation*,
    No. 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019)................................................16

*Dodots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*,
    No. 18-098-NM, 2018 WL 6629709 (D. Del. Dec. 19, 2018)...............................................19

*Evolved Wireless, LLC v. Samsung Elecs. Co.*,
    No. CV 15-545-SLR-SRF, 2016 WL 1019667 (D. Del. Mar. 15, 2016) ...........................7, 12

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3rd Cir. 2009) .............................................................................................6

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)......................................................................................7,18

*Global–Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)...........................................................................................7, 14, 15, 16

*Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*,
    967 F.3d 1380 (Fed. Cir. 2020).........................................................................................19

*Helios Streaming, LLC v. Vudu, Inc.*,
    No. 19-1792-CFC-SRF, 2020 WL 2332045 (D. Del. May 11, 2020) ..............................16, 18

*Huston v. Procter & Gamble Paper Prod. Corp.*,
    568 F.3d 100 (3d Cir. 2009)...................................................................................11

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006).............................................................................19

*PPG Industries Ohio, Inc. v. Axalta Coating Systems, LLC*,
    No. 21-346-LPS-SRF, 2022 WL 610740 (D. Del. Jan. 26, 2022)....................16, 17

*Princeton Dig. Image Corp. v. Ubisoft Ent. SA*,
    No. 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016) .........................8

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
    29 F. Supp. 3d 455 (D. Del. 2014).....................................................................10, 13

*Robocast, Inc. v. Netflix, Inc.*,
    640 F.Supp.3d 365 (D. Del. 2022) ........................................................................11

*Softview LLC v. Apple Inc*,
    No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) .................................9

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)...............................................................................7

*Valinge Innovation AB v. Halstead New England Corp.*,
    No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .......................8

*Varian Medical Systems, Inc. v. Elekta AB*,
    No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ...............................10

**Statutes**

35 U.S.C. § 271(a)-(c)...............................................................................................7, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................10

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On October 6, 2022, Network-1 Technologies, Inc. ("Network-1") filed this lawsuit accusing Honeywell International Inc. ("Honeywell") of infringing at least claim 6 of U.S. Patent No. 6,218,930 ("'930 Patent"). D.I. 1. Network-1 alleges that Honeywell directly, indirectly, and willfully infringes the claims of the '930 Patent. *Id.*

On May 22, 2023, Network-1 and Honeywell agreed to stay this case pending the outcome of Network-1's suit against Dahua Technology USA Inc. ("Dahua") given that the majority of products accused of infringement in this case were also accused of infringing the '930 Patent in the case against Dahua. D.I. 14. There is significant overlap in products between this case and the Dahua case because Honeywell resells Power over Ethernet ("PoE") products manufactured by third parties (e.g., Dahua) in support of its building security line of business (and therefore is not an active participant in the Network-1's amorphous "network industry"). On February 19, 2024, after the conclusion of the case against Dahua, Honeywell moved to lift the stay of this case because the parties failed to agree on the impact on this case of the settlement agreement between Network-1 and Dahua. D.I. 19. The dispute centers around Network-1's assertion that the settlement agreement does not include Dahua products accused of infringement in this case even though Network-1 agreed that the same Dahua products were accused of infringement in both cases and that Dahua's parent company, Dahua China, supplied Honeywell with the products. *Id.* Given Honeywell and Network-1 could not reach agreement on the Dahua issue, Honeywell now files the present motion to dismiss all of Network-1's claims.

## II.      SUMMARY OF THE ARGUMENT

Honeywell requests that the Court dismiss Network-1's allegations of induced, contributory, and willful infringement. Specifically, the Court should dismiss these claims because

the Complaint fails to plausibly establish that Honeywell had (1) knowledge of the '930 Patent, (2) knowledge that its actions induced others to infringe or contributed to others' infringement, or (3) that Honeywell was willfully blind to the '930 Patent's existence or Honeywell's alleged infringement prior to the filing of this action.

As an initial matter, the allegations against Honeywell are distinguishable from Network-1's allegations against Ubiquiti, Inc. ("Ubiquiti") or Fortinet, Inc. ("Fortinet").[1]  Although Network-1 filed the same "cookie-cutter" complaint against Honeywell, Ubiquiti and Fortinet,[2] the Complaint against Honeywell fails to account for one key difference between Honeywell and the other defendants: Honeywell is not a participant in Network-1's alleged "network industry." Therefore, Network-1's allegations about purported "industry knowledge" and Google search results for the '930 Patent fail to plausibly establish that *Honeywell* knew of—or was willfully blind to—the existence '930 Patent, let alone that Honeywell knew it was infringing the '930 Patent before it expired nearly four years ago. In addition to its deficient "industry knowledge" allegations, Network-1 relies on third-party knowledge, attenuated circumstances, and conclusory allegations in a futile attempt to establish that *Honeywell* plausibly knew of—or was willfully blind to—the existence or infringement of the '930 Patent.

---

[1]  Additionally, this Motion is different than motions brought by Ubiquiti and Fortinet because, not only are Network-1's allegations regarding Honeywell's pre-suit knowledge of the '930 Patent deficient, but the allegations in the Complaint fail to establish that Honeywell knew of the alleged infringement of the '930 Patent. Furthermore, Honeywell seeks dismissal of Network-1's allegations of direct infringement.

[2]  For example, the complaints are similar to the point that all three contain the same typographical errors. *E.g., compare* D.I. 1 at 5, *with Network-1 Techs., Inc. v. Ubiquiti Inc.*, No. 22-cv-1321-MN, D.I. 1 at 5 (D. Del. Nov. 6, 2022), *with Network-1 Techs., Inc. v. Fortinet, Inc*, No. 22-1319-MN, D.I. 1 at 5 (D. Del. Nov. 6, 2022) (showing all three complaints include two paragraphs labeled "22").

As to willful infringement, the Complaint fails to allege any facts to support a claim that, after Honeywell purportedly knew of the '930 Patent, it should have known the accused products infringed the '930 Patent. Given Network-1's failure to sufficiently plead the elements of indirect and willful infringement, the Court should dismiss these claims.

Honeywell also requests that the Court dismiss Network-1's claim of direct infringement for two reasons: first, it is not clear whether Network-1 itself is alleging that complying with IEEE Standards 802.3af and 802.3at (the "Standards") would necessarily infringe the '930 Patent or whether the portions of the Standards cited in the Complaint are mandatory. Second, Network-1 fails to allege how Honeywell actually performs the steps recited in claim 6, which requires connecting two devices—a data node and an access device—together. Because method claims can only be infringed when the claimed method is performed, Network-1's allegations fail as a matter of law, because they fail to explain how Honeywell itself uses the two separate devices to perform the claimed method. All Network-1 has done is allege that Honeywell *sells* separate products that its customers potentially use in an infringing manner, not that ***Honeywell*** uses them in the manner recited in claim 6. Based on the foregoing and the reasons set forth below, Network-1 has failed to sufficiently plead its claims of direct, indirect, and willful infringement, and therefore, the Court should dismiss the Complaint in its entirety.

## III.  STATEMENT OF FACTS

The majority of Network-1's Complaint is devoted to what it alleges would have been known by those in some amorphous "network industry"—often referencing information believed to be "publicly available to any person or company who was interested in or concerned about whether the 802.3af Power over Ethernet standard infringed any patent." D.I. 1 at ¶ 28. For example, according to the Complaint, the IEEE taskforce that developed the Standards learned of

the '930 Patent and specifically identified it as a discussion item on the agenda for a July 2001 meeting. *Id.* at ¶ 25. The Complaint further alleges that "key networking manufacturers" (but not Honeywell specifically) expressed concerns that one would infringe the '930 Patent by practicing the Standards, *id.* at ¶ 29, which prompted the IEEE taskforce to seek a letter of assurance from the previous owner of the '930 Patent. *Id.* at ¶ 30. Eventually, the previous owner provided a letter of assurance for the '930 Patent, which states only that **the previous owner** believed that an entity practicing the 802.3af standard would infringe the '930 Patent. *Id.* at ¶ 32-33.

With regard to Honeywell, the Complaint never alleges that Honeywell is a "key networking manufacturer," nor does the Complaint allege that Honeywell is one of the parties that is "interested in or concerned" about the Standards. *See* D.I. 1 at ¶ 28. Focusing on what is actually alleged with respect to Honeywell, the factual allegations for infringement of the '930 Patent are slim, simply alleging Honeywell "infringed, contributed to the infringement, and induced others to infringe the patent-in-suit by manufacturing, using, selling, offering for sale, or by using the methods claimed in the patent-in-suit . . . without a license or permission from Plaintiff." *Id.* at ¶ 41. Network-1 also provides some similarly conclusory allegations along with an "exemplary claim chart" in Exhibit 4 that contains little information. *See generally* D.I. 1, Ex. 4. Although 29 pages long, Exhibit 4 only offers unconnected and unclear allegations of infringement. *See id.* For example, Exhibit 4 begins with unsupported allegations that Honeywell directly infringes claim 6 of the '930 Patent by "practicing a method for remotely powering access equipment in a data network" using Honeywell's devices, unidentified third party's devices, and/or a combination of Honeywell and unidentified third party devices. *Id.* at 1. Exhibit 4 contains similarly unsupported allegations as to contributory and induced infringement. *See id.* at 2.

The claim chart included in Exhibit 4 also fails to provide any clarity as to how Honeywell directly, indirectly, or willfully infringes the '930 Patent. At bottom, the claim chart is a disparate amalgamation of sources, such as: (a) quotes from the IEEE Standards (however, the chart fails to identify which version of the Standards is being cited), (b) unidentified pictures, such as a "PoE Device and ENVR Network," and (c) four Honeywell product documents. *See generally id.*, Ex. 4.[3] The claim chart does not include any statements about ***how*** Honeywell practices the method, and instead repeats the same statements regarding the functionality of the "power sourcing equipment" (the alleged "data node" of claim 6) or "powered devices" (the alleged "access device" of claim 6).

As to the knowledge required to support Network-1's claim of indirect and willful infringement, the Complaint baldly alleges that Honeywell "had knowledge of, or was willfully blind to, the claims of the '930 Patent . . . ." D.I. 1 at ¶ 43. Immediately following this allegation, the Complaint quotes a letter dated January 15, 2004, which was allegedly sent to Intermec Technologies, Inc. *Id.* at ¶ 44. The Complaint goes on to allege that Intermec was acquired nine years later by Honeywell in 2013. *Id.* The portion of the letter to Intermec excerpted in the Complaint is as follows:

> We represent Network-1 Security Solutions, Inc. ("Network-1"), the owner of U.S. Patent No. 6,218,930 (the '930 Patent), a copy of which is included with this letter. For your information, Network-1 acquired all right, title, and interest in the '930 Patent from Merlot Communications, Inc. during 2003. The '930 Patent relates to several key technologies underlying the IEEE 802.3af Power Over Ethernet (PoE) standard that was approved on June 12, 2003 by the Institute of Electrical and Electronic Engineers (IEEE). Indeed, the '930 Patent is referenced by the IEEE in connection with its approval of the 802.3af standard.

---

[3] The relevant Honeywell documentation referenced, which is listed without attaching any copies of the materials, are the "HPOE3X-Data-Sheet," "Honeywell 30 Series IP Cameras Configuration Guide," "Honeywell Security IP Video," "3X Long Distance 4-Port PoE Switch Data Sheet."

*Id.* Thus, Network-1 seeks to infer Honeywell had knowledge of the '930 Patent based on this letter, which was sent over ***20 years ago*** to an entity that is not Honeywell. Furthermore, the Complaint fails to allege who the recipient of the letter was and whether that individual had any role in developing the products that Network-1 now accuses of infringement.

Finally, Network-1 makes a passing reference to an unnamed Honeywell employee being part of the IEEE. *Id.* at ¶ 31. Similar to the recipient of the Intermec letter, the Complaint fails to identify this individual and allege whether the individual has any relation to the products that now stand accused of infringement. The Complaint then alleges that Honeywell willfully infringed the '930 Patent, with the requisite intent apparently based on the same facts. *Id.* at ¶¶ 47-49.

## IV.    LEGAL STANDARD

### A.    Motion to Dismiss

A complaint should be dismissed if, as is the case here, it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3rd Cir. 2009). This plausibility standard requires Network-1 to provide "more than labels and conclusions, and a formulaic recitation of elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, it must provide sufficient factual allegations for the Court to "draw the reasonable inference that [Honeywell] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.    Infringement

Under the Patent Act, there are three forms of liability: direct, induced, and contributory. 35 U.S.C. § 271(a)-(c). All three are relevant here, as Network-1 includes allegations as to each.

Beginning with direct infringement, the Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells, within the United States or imports into the United

States any patented invention during the term of the patent therefor, infringes the patent." *Id.* at § 271(a).

Next, the Patent Act creates liability for induced infringement: "Whoever actively induces infringement of a patent shall be liable as an infringer." *Id.* at § 271(b). "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotations omitted).

The Patent Act also creates liability for contributory infringement. *See* 35 U.S.C. § 271(c). For contributory infringement, the patent owner must demonstrate, among others, "an offer to sell, sale, or import and knowledge by the defendant that the component is especially made or especially adapted for use in an infringement of" the patents-in-suit. *Evolved Wireless, LLC v. Samsung Elecs. Co.*, No. CV 15-545-SLR-SRF, 2016 WL 1019667, at *6 (D. Del. Mar. 15, 2016), *report & recommendation adopted*, No. 15-545-SLR-SRF, 2016 WL 1381765 (D. Del. Apr. 6, 2016) (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

For induced and contributory infringement, often referred together as indirect infringement, the accused infringer, here Honeywell, must both know of the patents-in-suit and know that the actions of the alleged direct infringer—here, Honeywell's customers—actually infringe the '930 Patent. *See Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011) ("[W]e proceed on the premise that § 271(c) requires knowledge of the existence of the patent that is infringed. Based on this premise, it follows that the same knowledge is needed for induced infringement under § 271(b)."); *see also Princeton Dig. Image Corp. v. Ubisoft Ent. SA*, No. 13-335-LPS-CJB, 2016 WL 6594076, at *4 (D. Del. Nov. 4, 2016) ("Claims for both induced infringement and contributory infringement require, *inter alia*, 'knowledge of the existence of the

patent that is allegedly infringed' as well as 'knowledge that the acts [at issue] constitute patent infringement.'") (quoting *Global-Tech*, 563 U.S. at 765–66) (alterations in original).

Although not a separate basis of liability, the Patent Act allows a court to award enhanced damages "based on allegations of willful misconduct . . . and courts more often than not describe claims for enhanced damages brought under § 284 as 'willful infringement claims.'" *Boston Scientific Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 841 (D. Del. 2021) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)). A plaintiff pursuing a claim of willful infringement must plausibly allege that "the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Valinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018).

## V.     ARGUMENT

The Court should dismiss Network-1's claims of indirect, willful, and direct infringement for the Complaint's failure to include sufficient factual allegations that would support the plausible inference that: (1) Honeywell had actual knowledge of the '930 Patent; (2) Honeywell had actual knowledge of infringement; (3) Honeywell was willfully blind to the existence of the '930 Patent and infringement thereof; and (4) Honeywell actually performs the claimed method.

### A.     It Is Not Plausible To Infer From The Complaint That Honeywell Had Actual Knowledge Of The Patent-In-Suit

Based on the scintilla of factual allegations, Honeywell's best guess as to Network-1's theory of how Honeywell gained knowledge of the '930 Patent is either through (1) Honeywell's acquisition of Intermec, or (2) an unnamed Honeywell employee that was an IEEE voting member as of the approval of the Standards over 21 years ago in June 2003. Neither provides a sufficient basis to infer that Honeywell had ***actual*** knowledge of the '930 Patent.

8

### 1. Intermec's Purported Knowledge Of The Patent-In-Suit Cannot Be Imputed To Honeywell

Network-1 alleges that Intermec (not Honeywell) gained knowledge of the '930 Patent through a letter sent over 20 years ago. D.I. 1 at ¶ 44. In the letter, Network-1 identifies the '930 Patent and states, it "relates [not that it is essential] to several key technologies underlying the IEEE 802.3af Power Over Ethernet (PoE) standard . . . ." *Id.* Network-1 then alleges Honeywell acquired Intermec in 2013. *Id.* From these factual allegations, Network-1 apparently seeks to infer Honeywell gained actual knowledge of the '930 Patent based on a parent-subsidiary relationship between Honeywell and Intermec established nearly a decade after the letter was sent.

These factual allegations are insufficient as a matter of law as shown by the numerous cases where this Court dismissed similar allegations. For example, this Court found in *Softview LLC v. Apple Inc.* that it is not plausible to impute a subsidiary's knowledge of the patents-in-suit to the parent corporation. No. 10-389-LPS, 2012 WL 3061027, at *5 (D. Del. July 26, 2012). The Court reasoned that the fact a parent-subsidiary relationship existed was not sufficient standing alone because "[s]everal steps of speculation are required to infer actual knowledge by [the parent] of the [patent-in-suit] from the fact" that a subsidiary has knowledge of the patent-in-suit. *Id.*; *see also Varian Medical Systems, Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772, at * 5 (D. Del. July 12, 2016) (finding that knowledge of a patent could not be imputed between a parent and its subsidiaries because the plaintiff needed "to set out more than just the bare fact of the parent/subsidiary relationship in order to make out a plausible claim that the U.S. Defendants had the requisite knowledge of the patent-in-suit").

Here, any alleged knowledge Intermec may have had of the '930 Patent cannot be imputed to Honeywell based on Network-1's allegations. Taking as true that Intermec had knowledge (as this Court must at the Rule 12(b)(6) stage), the Complaint contains no additional factual matter

beyond the parent-subsidiary relationship. In light of *Softview* and *Varian Medical*, that fact standing alone is insufficient to infer Honeywell possessed actual knowledge of the '930 Patent. Finally, the Complaint fails to identify the recipient of this letter and whether this individual worked with Honeywell after the acquisition. This is yet another way the Complaint fails to provide a basis for the Court to impute to Honeywell any alleged knowledge that Intermec (or an unnamed employee at Intermec) possessed.

### 2. An Unnamed Honeywell Employee's Involvement With IEEE Fails To Establish Honeywell's Knowledge Of The Patent-In-Suit

The only factual matter alleged in the Complaint directing related to Honeywell's actual knowledge of the '930 Patent is that a Honeywell employee was a voting member on the 802.3af standard. D.I. 1 at ¶ 31. This fact is also insufficient to support the inference that Honeywell had actual knowledge of the '930 Patent.

In *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, this Court found the plaintiff, ReefEdge, failed to plausibly allege that the defendant, Juniper, had pre-suit knowledge of the patents-in-suit. 29 F. Supp. 3d 455, 458-59 (D. Del. 2014). ReefEdge alleged that an employee of Juniper had knowledge of the patents-in-suit due to her previous employment with the prior owner of the patents-in-suit, Symantec. *Id.* at 458. ReefEdge further alleged that, because the former-Symantec employee went on to manage Juniper's intellectual property, Juniper had actual knowledge of the patents-in-suit. *Id.* This Court found these factual allegations insufficient to support the inference Juniper had knowledge of the patents-in-suit, because ReefEdge made "no specific allegations linking the knowledge [the former-Symantec employee] may have acquired from her work at Symantec to her work at Juniper." *Id.*

Similarly, in *Robocast, Inc. v. Netflix, Inc.*, this Court found that the plaintiff's theories to be "speculative" and declined to find the defendant had pre-suit knowledge of an asserted patent.

640 F.Supp.3d 365, 371-72 (D. Del. 2022). In *Robocast*, the plaintiff alleged the defendant—Netflix—had notice of the '451 Patent through its affiliation with two individuals previously affiliated with a defendant against whom the plaintiff asserted the '451 Patent. *Id.* at 371. Thus, the plaintiff alleged, based on the prior litigation, the two individuals learned of the '451 Patent and that knowledge should be imputed to Netflix. *Id.* Ultimately, the Court declined to impute the knowledge because the plaintiff failed to allege any "specific facts suggesting that the knowledge of [the two individuals] can plausibly be imputed to Netflix." *Id.*

Here, the Complaint's allegations are even more attenuated than the allegations found deficient in *ReefEdge* and *Robocast*. The Complaint fails to identify: (1) the name of the Honeywell employee; (2) what role the employee served on the 802.3af taskforce; (3) what role the employee served at Honeywell; and (4) if the employee had knowledge of the accused products in this case. Critically, the Complaint offers no allegations as to what position at Honeywell this employee held or whether involvement in the IEEE was within the scope of his or her responsibilities. Given these key failures, there are no allegations on which the Court could impute this unnamed employee's knowledge to Honeywell. *E.g.*, *Huston v. Procter & Gamble Paper Prod. Corp.,* 568 F.3d 100, 107 (3d Cir. 2009) ("[E]ven if knowledge lies within the scope of an employee's duties, that knowledge is not necessarily imputed to the employer. Rather, to justify imputation, the knowledge must also be material—i.e., important or significant—to the employee's duties to the employer.") (citing Restatement (Second) of Agency § 272 cmt. A). Thus, any allegations predicated on this unnamed Honeywell employee's involvement in events that occurred 21 years ago fail to support a plausible inference that Honeywell had actual knowledge of the patent.

**B.      It Is Not Plausible To Infer From The Complaint That Honeywell Had The Necessary Knowledge And Intent To Indirectly And Willfully Infringe**

Even assuming Honeywell knew about the '930 Patent, which is far from sufficiently pled, Network-1's Complaint does nothing to allege Honeywell knew its actions infringed the '930 Patent, which is a requirement for indirect and willful infringement. *Global Tech*, 564 U.S. at 763 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)) (contributory requirement); *id.* at 766 (induced requirement). Further, to properly plead willful infringement, "[t]he complaint must demonstrate a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement were either known or were so obvious that they should have been known." *Evolved Wireless*, 2016 WL 1019667, at *3. Here, Network-1 fails to allege any facts that Honeywell knew of any acts that constituted direct infringement of the '930 Patent.

Beginning with the letter to Intermec, Network-1's allegations are just as deficient to establish knowledge of infringement as were the allegations in *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468 (D. Del. 2021). In *Bench Walk*, the Court found a pre-suit letter from the plaintiff to the defendants was not sufficient to plausibly infer the defendants knew the accused products infringed the patent-in-suit. *Id.* at 492. Among the many deficiencies noted by the Court, the letter in *Bench Walk* was only addressed to one of the defendants, only identified some of the accused products, and made no attempt to explain how the defendant's products infringed the patents listed in the letter. *Id.* After noting these deficiencies, the Court stated that it did not understand "how the letter could have provided Defendants with notice of how they infringed any patent-in-suit, since the letter made no attempt to do so." *Id.*

This Court's reasoning in *Bench Walk* equally applies to the letter sent to Intermec: the letter was only sent to an individual at Intermec, the Complaint does not allege the letter identified

any of the accused products in this case, and the letter did not even use the word infringement, let alone attempt to explain how Intermec may have infringed the '930 Patent. *See* D.I. 1 at ¶ 44. Furthermore, the letter to Intermec did not state that the '930 Patent was essential to practicing the Standards. *See id.* Based on the excerpted portion of the letter, there is no basis to infer "how the letter could have provided [Intermec, let alone Honeywell] with notice of how [Intermec or Honeywell] infringed [the '930 Patent], since the letter made no attempt to do so." *Bench Walk*, 530 F. Supp. 3d at 492. Nor could the letter have provided Honeywell with knowledge of infringement for two reasons: (1) Intermec did not develop the accused products, and (2) the accused products were not even in development twenty years ago when the letter was sent to Intermec. Thus, the letter to Intermec clearly did not provide Honeywell with knowledge of its alleged infringement, because it would have been impossible to do. Therefore, the Complaint fails to show how it is even plausible that Honeywell possessed the requisite knowledge of direct infringement for the purposes of indirect and willful infringement.

Moving to the alleged Honeywell employee, this Court further found in *ReefEdge* that the complaint failed to "demonstrate a link" between the former-Symantec employee's alleged knowledge of the patents-in-suit and the knowledge of infringement. 29 F. Supp. 3d at 458. Furthermore, the Court found that ReefEdge failed to "adequately plead facts showing that anyone at Juniper had both pre-suit knowledge of the patents-in-suit **and** the knowledge that these patents were being infringed." *Id.* at 459-60 (emphasis added). Thus, the Court dismissed both the willful and induced infringement claims for failure to plausibly allege that the person who allegedly knew of the patents-in-suit also knew that the accused products infringed those patents.

Like the complaint in *ReefEdge*, the Complaint here fails to allege anything as to what knowledge of infringement the unnamed Intermec employee who received the letter or the

unnamed Honeywell employee who participated in the IEEE may have possessed. The Complaint further fails to allege that anyone at Honeywell knew both of the '930 Patent and that the accused products would infringe it. Applying this Court's reasoning in *ReefEdge* to the present facts:

> Even if [this Honeywell employee's] pre-suit knowledge of the patent[]-in-suit can be imputed to [Honeywell], the [Complaint] does not allege any facts showing that [the employee] had any knowledge of the accused products. Hence, the [Complaint] fails adequately to allege that prior to the filing of this suit, [Honeywell] specifically intended its customers to infringe the patent[]-in-suit.

*Id.* at 459-60. Therefore, these allegations are insufficient to support a plausible inference that Honeywell knew the accused products infringed the '930 Patent.

In sum, there are insufficient factual allegations in the Complaint to plausibly infer that Honeywell had actual knowledge of the '930 Patent or actual knowledge that the accused products infringed the '930 Patent. Therefore, the Court should dismiss the indirect and willful infringement claims on this basis as well.

### C.     It Is Not Plausible To Infer From The Complaint That Honeywell Was Willfully Blind, It Should Have Known That Its Products Infringed The Patent-In-Suit, Or The Accused Products Have No Substantial Non-Infringing Uses

The knowledge requirement of indirect infringement can be met by showing of willful blindness in circumstances different from what Network-1 has alleged. *See Global-Tech*, 563 U.S. at 768. For willful blindness, there are two basic requirements: "(1) [t]he defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769. Thus, "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.*

As an initial matter, Network-1 fails to allege *any* facts that could demonstrate Honeywell's alleged willful blindness. The Complaint tautologically recites the phrase, "or was willfully blind

to," as if the more it recites this phrase, the more plausible it is that Honeywell was willfully blind. *See* D.I. 1 at ¶¶ 43, 45, 48-49. This alone is sufficient grounds for dismissal.

To the extent Network-1 is attempting to allege that Honeywell was willfully blind to the existence of the '930 Patent and of infringement based on the allegations contained in the section entitled, "Industry Knowledge that the '930 Patent Covers the 802.33af [*sic*] and 802.3at Power Over Ethernet Standards," the Complaint still fails. *Id.* at ¶¶ 23-35. In particular, the following allegations simply do not create a plausible inference to support a finding of willful blindness: (1) an unnamed Honeywell employee voting on the 802.3af standard, (2) the '930 Patent allegedly being determined essential to the standard, (3) "key networking companies express[ing] concerns" regarding the '930 Patent, and (4) the fact that any person or company who was interested in or concerned about whether practicing the 802.3af standard would infringe any patent could find the answer using a simple Google search. *Id.* The allegations in this section fail to support either requirement of willful blindness. Additionally, these allegations fail to demonstrate how Honeywell allegedly took deliberate actions to avoid learning that it was potentially infringing the '930 Patent, especially when Honeywell is not a participant in the alleged network industry.

The factual allegations in this section are really an attempt to establish that Honeywell "should have known" that the '930 Patent existed and that, by practicing the Standards, Honeywell would infringe the '930 Patent. However, the Supreme Court expressly rejected "should have known" as the proper standard for willful blindness for indirect infringement. *Global-Tech*, 563 U.S. at 770.

Furthermore, this Court has found that a patent owner's general allegation that an entity is infringing by complying with a standard is not enough to support an inference of willful blindness for indirect infringement. *See Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792-CFC-SRF, 2020

WL 2332045, at *9 (D. Del. May 11, 2020), *report & recommendation adopted*, No. 19-1792-CFC-SRF, 2020 WL 3167641 (D. Del. June 15, 2020). Likewise, even if the Court finds that it is plausible that Honeywell participates in Network-1's alleged network industry, this Court has found insufficient general allegations that a party's participation in the relevant industry supports a finding of knowledge. *PPG Industries Ohio, Inc. v. Axalta Coating Systems, LLC*, No. 21-346-LPS-SRF, 2022 WL 610740, *5 (D. Del. Jan. 26, 2022) ("Furthermore, PPG's allegations that Axalta had knowledge of the patent because the patent and award-winning technology were well-known in the automotive industry cannot, by itself, support an inference that Axalta had pre-suit knowledge of the '505 patent.").

The Complaint also fails to provide factual allegations sufficient to infer that Honeywell should have known it was infringing for the purposes of willful infringement. In *Deere & Company v. AGCO Corporation*, this Court dismissed willful infringement claims for four of the patents-in-suit under similar facts. No. 18-827-CFC, 2019 WL 668492, at *6 (D. Del. Feb. 19, 2019). The complaint in *Deere* alleged that one of the defendants gained knowledge of the patents-in-suit through a letter. *Id.* After reviewing the letter however, the Court found that the letter was not sufficient to establish the defendants should have known they were infringing because it did not identify the accused products, nor explained what acts constituted infringement. *Id.*

Here, the letter to Intermec is similarly deficient. Honeywell could not have "knowledge" based on a letter that was sent to a third party (Intermec), over twenty years ago which failed to identify any products offered by Honeywell. In addition, Network-1 does not allege any facts or additional communications from either Intermec and Honeywell that would provide the necessary notice of the '930 Patent, such that it would be plausible to infer that Honeywell should have known it infringed the same. Thus, Network-1's willful infringement claims are inadequate.

Finally, regarding contributory infringement, this claim should be dismissed because of the failure to plead facts specific to substantial non-infringing use of the accused products. "To state a claim for contributory infringement, . . . a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). Here, "no such facts pleaded [] allow the Court to draw such an inference" and therefore, the Court should dismiss the claim of contributory infringement on this basis alone. *AgroFresh Inc. v. Essentiv LLC*, No. 16-662-MN, 2019 WL 350620, at *5 (D. Del. Jan. 29, 2019).

Accordingly, the Court should dismiss both Network-1's indirect and willful infringement claims for failure to allege sufficient factual matter to plausibly infer Honeywell possessed knowledge of the '930 Patent, possessed knowledge that the accused products infringed, or was willfully blind or should have known of the '930 Patent and infringement.

**D.    It Is Not Plausible To Infer From The Complaint That Honeywell Is Liable For Direct Infringement Of The Method Claims Of The Patent-In-Suit**

Network-1's Complaint similarly fails to include sufficient facts to support direct infringement. Notably, the allegations of direct infringement are conclusory and nothing more than a recitation of § 271(a). *See* D.I. 1 at ¶ 41 ("Defendant infringed the patent-in-suit by manufacturing, using, selling, offering for sale, or by using the methods claimed in the '930 Patent."). Furthermore, it is not clear that the Network-1 itself alleges the '930 Patent is essential for practicing the Standards, as Network-1 has carefully phrased its allegations to avoid taking a clear position on this critical issue. *See, e.g.*, *id.* at ¶ 15 ("twenty-eight companies that made, used, and sold PoE products that comply with the IEEE 802.3af and 802.3at standards have licensed the '930 Patent."); ¶ 23 (failing to identify which party identified the '930 Patent as "a patent that covers the IEEE 802.3af standard"); ¶ 28 (identifying an IEEE agenda that allegedly identified the

'930 Patent as an essential patent); ¶ 31 ("the IEEE voted on and formally adopted the 802.2af [sic] standard covered by the '930 Patent"). Network-1 however, appears to be asserting that the '930 Patent is essential to practicing the Standards as Network-1 extensively cites to the Standards to allege infringement. *See* D.I. 1, Ex. 4.

"Although 'a district court may rely on an industry standard in analyzing infringement . . . in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement.'" *Helios*, 2021 WL 254069, at *5 (quoting *Fujitsu*, 620 F.3d at 1327). Furthermore, where "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section, a plaintiff may not establish infringement by arguing that the product admittedly practices the standard, therefore it infringes." *Fujitsu*, 620 F.3d at 1327–28. Thus, "where, but only where, a patent covers mandatory aspects of a standard, is it enough to prove infringement by showing standard compliance." *Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd.*, 967 F.3d 1380, 1384 (Fed. Cir. 2020).

Network-1 clearly fails to provide any allegations as to whether the sections of the Standards it cites in support of its allegations are mandatory or optional. Given this failure, Network-1 cannot rely on the Standards to support its direct infringement allegations because "***only where***" a patent covers mandatory aspects of a standard may infringement be shown through standard compliance. *Godo Kaisha*, 967 F.3d at 1384.[4]

---

[4]   Also, it is not clear whether Network-1 can allege that the cited portions of the Standard are mandatory because the Standards provide two alternative ways to comply. *See Network-1 Techs., Inc. v. Hewlett-Packard Co.*, No. 6:13-cv-00072-RWS, D.I. 76 at 96:10-97:13 (E.D. Tex. Nov. 11, 2017).

To the extent Network-1 asserts that the '930 Patent is essential, it still failed to sufficiently allege direct infringement because there needs to be factual allegations explaining **_how_** Honeywell performed each step of the method. *Dodots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*, No. 18-098-NM, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (citing *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012)) ("Where, as here, the asserted claims are method claims, it is well-established that direct infringement exists only where there is performance of every step of the claimed method."). Thus, "[m]ethod claims are only infringed when the claimed process is **_performed_**, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) (emphasis added).

Here, Network-1 only identifies three Honeywell products—(1) the HOPE3X switch, (2) the AT-FS708/POE-50 switch, and (3) the Honeywell 30 Series IP Cameras—and alleges these products infringe based on excerpts from documents related to the products. *See generally* D.I. 1, Ex. 4. Network-1, however, provides no allegations as to how Honeywell actually uses these products to practice the steps of claim 6, which recites:

> Method for remotely powering access equipment in a data network, comprising,
>  providing a data node adapted for data switching, an access device adapted for data transmission, at least one data signaling pair connected between the data node and the access device and arranged to transmit data there between, a main power source connected to supply power to the data node, and a secondary power source arranged to supply power from the data node via said data signaling pair to the access device,
>  delivering a low level current from said main power source to the access device over said data signaling pair,
>  sensing a voltage level on the data signaling pair in response to the low level current, and
>  controlling power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level.

Claim 6 clearly requires two devices—a data node and an access device—to be connected in a specific manner and perform specific steps. Network-1 does not allege that Honeywell itself

performs these steps, and therefore, Network-1's allegations of direct infringement are deficient as a matter of law.

As a specific example of Network's failure to sufficiently allege actual use is Network-1's allegations with respect to the limitation "delivering a low level current from said main power source to the access device over said data signaling pair." For this limitation, Network-1 only alleges that: "Honeywell's IEEE 802.3af and IEEE 802.3at compliant power sourcing equipment contains circuitry that delivers a low level current (detection probe) to the access device over the data signaling pairs via a PD detection signature." D.I. 1, Ex. 4 at 22. Thus, not only are the allegations deficient because they focus on what the device might be ***capable of***, these allegations also do not specifically allege how Honeywell actually uses (i.e., implements) the two separate devices in conjunction to practice the claimed method.

In short, the Court should dismiss Network-1's direct infringement claims as a matter of law, because Network-1's allegations fail to allege sufficient facts to demonstrate ***Honeywell*** actually performs the asserted method claim.

## VI.   CONCLUSION

For the foregoing reasons, Honeywell respectfully request that the Court grant the Motion and dismiss Network-1's claims of induced, contributory, willful, and direct infringement.

Dated: April 4, 2024                              **K&L GATES LLP**

                                                  */s/ Steven L. Caponi*
                                                  Steven L. Caponi (No. 3484)
                                                  Matthew B. Goeller (No. 6283)
                                                  Megan E. O'Connor (No. 6569)
                                                  600 N. King Street, Suite 901
                                                  Wilmington, DE 19801
                                                  Phone: (302) 416-7000
                                                  steven.caponi@klgates.com
                                                  matthew.goeller@klgates.com
                                                  megan.oconnor@klgates.com

                                                  *Of counsel:*

                                                  Devon C. Beane
                                                  Nathan J. Fuller
                                                  Jared R. Lund
                                                  K&L GATES LLP
                                                  70 W. Madison, Suite 3100
                                                  Chicago, IL 60602
                                                  Phone: (312) 372-1121
                                                  devon.beane@klgates.com
                                                  nathan.fuller@klgates.com
                                                  jared.lund@klgates.com

                                                  *Attorneys for Defendant Honeywell*
                                                  *International Inc.*